

# THE ATTORNEY GENERAL

# OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

December 11, 1970

Honorable J. R. Singleton                    Opinion No. M- 747
Executive Director
Texas Parks and Wildlife Department          Re:  Status of a contract for
John H. Reagan Building                           the construction of a
Austin, Texas  78701                              fish pass between Corpus
                                                  Christi Bay and the Gulf
                                                  of Mexico, adjacent to
                                                  Mustang Island, and re-
Dear Mr. Singleton:                               lated questions.

        Your request for an opinion on the above subject matter
asks the following questions:

        "1.  Does a valid, binding contract exist
        between Brown and Root, Inc. and the State of
        Texas for the work described in the document
        dated August 28, 1970, and styled 'State Build-
        ing Commission Contract Award' (made on behalf
        of the State of Texas), in the amount of
        $1,300,245 for project No. 0-069-802?

        "2.  Have monies appropriated in Item 23,
        House Bill 2, 61st Legislature, Second Called
        Session, to the Parks and Wildlife Department
        for the fiscal year ending August 31, 1970,
        been obligated?

        "3.  Are the balances remaining in Item 23
        for fiscal years ending August 31, 1970, and
        August 31, 1971, available for expenditure for
        the purpose appropriated?"

        You have enclosed with your request the following documents:

        1.  A copy of the agreement of acceptance dated 29 April,
1970, which was executed following Parks and Wildlife Commission
approval on April 28, 1970, of the budgeting of funds for construc-
tion of the pass and approaches.

-3637-

2.    A portion of the minutes of the Parks and Wildlife Commission meeting indicating approval of the Commission of this project.

3.    The minutes of the State Building Commission meeting of May 6 approving selection of Turner, Collie and Braden, Inc. as consulting engineers.

4.    The engineering agreement between the State Building Commission and Turner, Collie, and Braden, Inc. for their services on behalf of the State of Texas.

5.    Copies of letters on behalf of the State of Texas to various firms indicating a need for some specific engineering data and inviting them to submit a proposal.

6.    A letter on behalf of the State of Texas addressed to Frank Bryant and Associates indicating acceptance of their proposal for the soil tests.

7.    A copy of a letter addressed to this office by the State Building Commission suggesting that funds for the fiscal year ending August 31, 1971 be made available in order that the works contracted for can be better handled.

8.    A supplemental agreement of acceptance indicating that the second year funds for the project would be available.

9.    A copy of a letter from the State Building Commission to Turner, Collie, and Braden, Inc. proposing an amendment to the existing contract for engineering services.

10.    A copy of a Public Notice published on behalf of the State of Texas calling for bids to be submitted no later than 2 P.M., August 27, 1970 for construction of the project.

11.    The Contract Award referred to in Question 1 above, dated August 28, 1970 committing $1,300,245 for the items specified to Brown and Root, Inc.  This Contract Award carried the Comptroller's certification that appropriations are available for the contract described above.

12.    A copy of a letter from Brown and Root, Inc. indicating their willingness to hold the bids firm until November 24, 1970 pending definitive award of the job.

13.   A copy of the Comptroller's Journal Voucher indicating that the $1,300,245 previously set aside for payment to Brown and Root, Inc. upon successful completion of their contract and $1,500,000 of the 1970-71 funds plus the unexpended balance of $73,725.62  from the 1969-70 appropriations are placed in suspense.

You further state that the following expenditures and encumbrances of funds appropriated for this purpose for the fiscal year ending August 31, 1970 have been made:

| "TO | VOUCHER NO. | | AMOUNT |
|---|---|---|---|
| "Turner, Collie and Braden | 6159-01 | $ | 5,000.00 |
| Frank Bryant and Associates | 8396-01 | | 12,398.70 |
| The Houston Post | 8425-12 | | 26.88 |
| Caller-Times Publishing Company | 8425-11 | | 10.44 |
| Turner, Collie and Braden | 8477-01 | | 32,235.00 |
| Turner, Collie and Braden | 202-01 | | 74,218.36 |
| Frank Bryant and Associates | 482-01 | | 2,140.00 |
| TOTAL | | $ | 126,029.00 |
| Encumbered to Brown and Root | | $ | 1,300,245.00 |
| Expended or encumbered | | $ | 1,426,274.38 |
| BALANCE REMAINING | | | 73,725.62" |

Item 23 of the appropriation to the Parks and Wildlife Department, contained in House Bill 2, Acts 61st Leg. 1969, 2nd C.S. reads as follows:

"For the Years Ending
August 31, 1970      August 31,1971

"23.   For preparation of detailed plans and specifications, and all other necessary costs in connection with first phase construction of a water exchange pass (and bridge) between Corpus Christi Bay and the Gulf of Mexico adjacent to Mustang Island according to preliminary engineering plans.   ..................

$1,500,000              $1,500,000"

In construing the above quoted provisions, we held in Attorney General's Opinion M-574 (1970):

"You are therefore advised in answer to your second and third questions that if the Parks and Wildlife Department intends to maintain the 'water exchange pass' as a fish pass, such funds may be

expended from the Special Game and Fish Fund No.
9; . . ."

In Attorney General's Opinion M-721 (1970), with regard
to the construction of the fish pass in question, we expressed the
opinion that the Parks and Wildlife Department may contract for the
construction of the bridge and approaches with an independent con-
tractor . We further concluded that the State Building Commission
could not contract for such construction.

Prior to the release of Opinion No. M-721, dated November
5, 1970, the State Building Commission on August 28, 1970, made an
award in writing to Brown and Root, Inc., for such construction in
the amount of $1,300,245.00. Said award was made to the lowest and
best bidder of bids submitted pursuant to advertisement for bids and
subsequent to the allotment of funds appropriated by the Legislature
in Item 23 for such purpose, said allotments being made by the State
Building Commission and the Parks and Wildlife Department on the 29th
day of April, 1970. No formal contract however has been signed by
Brown and Root, Inc., and agents of the State of Texas.

All acts by the State Building Commission have been ap-
proved by the Parks and Wildlife Department in connection with the
awarding of this contract. Therefore, while the State Building
Commission for reasons stated in Attorney General's Opinion M-721
(1970) did not have the constitutional power and authority to act
for the State of Texas, it is nevertheless our opinion that such
acts are binding on the Parks and Wildlife Department, an agency of
the State of Texas, authorized to bind the State.

It is fundamental that all contracts spring from an
"offer" and "acceptance." 13 Tex.Jur.2d 130, Contracts, §15.

Since the bid of Brown and Root, Inc. (offer) was accepted
by the State Building Commission and the Parks and Wildlife Depart-
ment (award of the State Building Commission accepted and approved
by the Parks and Wildlife Department), it is our opinion in answer
to your first question that such action constitutes a valid and
binding contract between Brown and Root, Inc. and the State of Texas
for the work described in the document dated August 28, 1970, de-
signated as "State Building Commission Contract Award," in the amount
of $1,300,245.00 for Project No. 0-069-802, and the Parks and Wildlife
Department is required to execute the contract in accordance with the
bid of Brown and Root, Inc. and the award made by the State Building
Commission and the Parks and Wildlife Department.

In answer to your second question, you are further advised that monies appropriated in Item 23 under the facts submitted have been obligated in the amount of $1,426,274.38, leaving an unexpended and unencumbered balance of $73,725,62. Since the Legislature did not appropriate the unexpended balance, you are advised that the balance remaining in the appropriation for the fiscal year ending August 31, 1970, has lapsed.

In answer to your third question, you are advised that monies appropriated in Item 23 for the fiscal year ending August 31, 1971, are available for expenditures for the purpose appropriated.

## S U M M A R Y

An award by the State Building Commission approved by the Parks and Wildlife Department legally encumbered monies appropriated to the Parks and Wildlife Department for the construction of a fish pass. Balances remaining in funds appropriated for the fiscal year ending August 31, 1970, which have not been expended or encumbered lapsed for the reason that such balances were not reappropriated for the fiscal year ending August 31, 1971. Monies appropriated for the fiscal year ending August 31, 1971, are available for expenditure for the purpose appropriated.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by John Reeves
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
J. C. Davis
Arthur Sandlin
Houghton Brownlee
Max Flushe

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant